

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | 08 CR 746-1 |
| Plaintiff, ) | |
| ) | |
| v. ) | Hon. Charles R. Norgle |
| ) | |
| AUGUSTIN ZAMBRANO ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Charles R. Norgle, District Judge

Before the court is Defendant Augustin Zambrano's ("Zambrano") Motion for Judgment of Acquittal Notwithstanding the Verdict, or Alternatively, Motion for a New Trial ("Zambrano Motion"). For the following reasons, the motion is denied.

### I. BACKGROUND

On April 6, 2011, a jury convicted Zambrano of racketeering conspiracy, 18 U.S.C. § 1962(d); assault with a dangerous weapon, id. § 1959(a)(3); and conspiracy to commit extortion, id. § 1951. Zambrano was tried with three other defendants in a joint trial in which all defendants were found guilty of all counts. The counts stemmed from the activities of the Latin Kings street gang in the Chicago area. Zambrano allegedly was the gang's leader, or "Corona," and the other three defendants were ranking members. Over five weeks, the government presented the jury with evidence including approximately seventy tape and video recordings, a number capturing Zambrano; cooperating gang members who testified for the government against Zambrano; the gang's written constitution and the chapter's local gang rules; cocaine and firearms seized

by law enforcement; and testimony by government agents. The jury was empaneled anonymously, and their verdict form remains sealed. Zambrano now moves this court under Rule 29 for a judgment of acquittal or, in the alternative, under Rule 33 for a new trial.

## I. DISCUSSION

### A. Standards of Review

In attacking the sufficiency of the evidence in a Rule 29 motion for judgment of acquittal after a guilty verdict, a defendant "faces a nearly insurmountable hurdle." United States v. Howard, 619 F.3d 723, 726 (7th Cir. 2010) (quoting United States v. Morris, 576 F.3d 661, 665-66 (7th Cir. 2009)); see also United States v. Warren, 593 F.3d 540, 546 (7th Cir. 2010) ("a heavy, indeed, nearly insurmountable, burden"); United States v. Blanchard, 542 F.3d 1133, 1154 (7th Cir. 2008) ("daunting task"). The deference owed jury verdicts means successful challenges are rare. Howard, 619 F.3d at 726 (quoting United States v. Melendez, 401 F.3d 851, 854 (7th Cir. 2005)). In considering the challenge, the court views the evidence "in the light most favorable to the government and will uphold the jury's verdict so long as any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. (quoting United States v. Garcia, 580 F.3d 528, 534 (7th Cir. 2009)). The court does not "weigh the evidence or assess the credibility of witnesses." Id. (quoting United States v. Khattab, 536 F.3d 765, 769 (7th Cir. 2008)); see also Blanchard, 542 F.3d at 1154 (courts defer to the jury's credibility determinations).

Rule 33, in contrast, provides that "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). The standard for a

Rule 33 motion for a new trial is different than a Rule 29 judgment of acquittal. The "task is to determine whether the verdict is so contrary to the weight of evidence that a new trial is required." United States v. Chambers, 642 F.3d 588, 592 (7th Cir. 2011) (citing United States v. Washington, 184 F.3d 653, 657 (7th Cir. 1999)). "A defendant is [also] entitled to a new trial if there is a reasonable possibility that a trial error had a prejudicial effect upon the jury's verdict." United States v. Van Eyl, 468 F.3d 428, 436 (7th Cir. 2006) (citing United States v. Berry, 92 F.3d 597, 600 (7th Cir. 1996)). The court does not view the evidence in a light most favorable to the government, but instead makes its own assessment. See United States v. Washington, 184 F.3d 653, 657 (7th Cir. 1999); see also Tibbs v. Florida, 457 U.S. 31, 38 n.11 (1982). Granting a Rule 33 motion is nevertheless disfavored except in "the most extreme cases." United States v. Linwood, 142 F.3d 418, 422 (7th Cir. 1998) (quotations omitted). The court "may not reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable." United States v. Reed, 875 F.2d 107, 113 (7th Cir. 1989). The court may only order a new trial if "the verdict is against the manifest weight of the evidence" and would result in a "miscarriage of justice." Washington, 184 F.3d at 657-658.

### A. Post-Trial Motions

Zambrano asserts that several trial errors, individually and in sum, violated his constitutional right to a fair trial. "In some cases, the cumulative harm of several errors may justify a new trial when a single error standing alone would not." United States v. Eberhart, 434 F.3d 935, 938 (7th Cir. 2006); see also United States v. Banks, 405 F.3d 559, 570 (7th Cir. 2005) (errors each insignificant on their own may create cumulative harm); United States v. Santos, 201 F.3d 953, 965 (7th Cir. 2000) (on review courts

3

consider harm in the aggregate). The government contends, however, that most of Zambrano's arguments are undeveloped. A district judge is not compelled to respond to undeveloped arguments. United States v. Olmeda-Garcia, 613 F.3d 721, 723-24 (7th Cir. 2010); see also Harvey v. Town of Merrillville, No. 11-1041, 2011 WL 2674830, at *6 (7th Cir. July 11, 2011) (arguments that are perfunctory, undeveloped, or unsupported by authority are waived); United States v. Turcotte, 405 F.3d 515, 536 (7th Cir. 2005) (same). The court takes each allegation of error in turn.

### 1. Denial of Pre-Trial Motions

Zambrano argues the court erred in denying, or effectively denying, four post-trial motions: Motion for a Bill of Particulars and the Supporting Memorandum; Motion to Exclude Gang Tattoo Evidence; Motion to Exclude Tape Evidence; and Motion to Exclude any reference to Zambrano's prior incarceration.

#### *a) Bill of Particulars*

Rule 7(f) provides "for the filing of a bill of particulars—a more specific expression of the activities defendant is accused of having engaged in which are illegal." United States v. Canino, 949 F.2d 928, 949 (7th Cir. 1991). The bill's purpose is to inform a defendant of the nature of the charges and allow a sufficient opportunity to prepare for trial. United States v. Kendall, 665 F.2d 126, 134 (7th Cir. 1981). But a bill of particulars is not required when a defendant can obtain the information necessary for his or her defense through "some other satisfactory form." United States v. Fassnacht, 332 F.3d 440, 447 n.2 (7th Cir. 2003) (quoting Canino, 949 F.2d at 949). "An indictment which includes each of the elements of the offense charged, the time and place of the accused's conduct which constituted a violation, and a citation to the statute or statutes

4

violated is sufficient to pass this test." Fassnacht, 332 F.3d at 446. If by reading the indictment the defendant could "reasonably anticipate the evidence to be introduced at trial," the denial of a bill does not prejudice the defendant. United States v. Andrus, 775 F.2d 825, 843 (7th Cir. 1985).

The Superceding Indictment ("SI") names Zambrano as the gang's leader overseeing all members and activities. SI 5-6. The SI accuses Zambrano of engaging in a racketeering conspiracy—including counts of drug trafficking, extortion, obstruction of justice, witness tampering, murder, attempted murder, and solicitation to commit murder—in violation of eight specified federal and state criminal statutes, from January 2000 to the time of indictment. SI 8-10. The SI accuses Zambrano of assault with a dangerous weapon April 14, 2008, against "Victims E and F," in violation of "state law" and two specific federal criminal statutes. SI 21. The SI further alleges Zambrano conspired to extort a business that sold fake IDs from no later than 2000 until September 2008 in "the Little Village area of Chicago" by threatening violence to obtain cash payments, in violation of a specific federal criminal statute. SI 22.

The level of detail in the SI amply provides Zambrano notice of the charges against him and satisfies the purpose of the test set forth in Fassnacht. To the extent there are technical shortcomings in the SI, its ample detail removes any prejudice because Zambrano could "reasonably anticipate the evidence to be introduced at trial." Andrus, 775 F.2d at 843. The court did not err in denying Zambrano's motion.

### b) Gang Tattoo Evidence

Zambrano moved before trial to exclude evidence of gang tattoos, including photographs, on the ground that unfair prejudice from tattoos "far outweighs" probative

5

value under Federal Rule of Evidence 403. The government contends the tattoos were evidence showing that Zambrano and the other three defendants charged in a RICO conspiracy were in fact members of the organization—the Latin Kings street gang—that ran the illegal enterprise.

Gang tattoos are not unfairly prejudicial and may be admissible in certain cases, particularly where a conspiracy among members of a gang is charged. United States v. Irvin, 87 F.3d 860, 864 (7th Cir. 1996); see also United States v. Sargent, 98 F.3d 325, 328 (7th Cir. 1996) ("[G]ang membership can be key to establishing criminal intent or agreement to conspire."); United States v. Thomas 86 F.3d 647, 652 (7th Cir. 1996). Court still must carefully consider gang affiliation evidence to avoid undue prejudice. See United States v. Harris, 587 F.3d 861, 867 (7th Cir. 2009); United States v. Richmond, 222 F.3d 414, 417 (7th Cir. 2000). Tattoos are not admissible "when they are only admitted to show membership in a gang" apart from a conspiracy. United States v. Thomas, 312 F.3d 627, 631 (7th Cir. 2003). All four defendants here, including Zambrano, were allegedly Latin Kings, as were more than two dozen others charged in the racketeering case. At trial, tattoo evidence demonstrated membership in a gang whose members composed a RICO conspiracy. For example, the government presented evidence of the gang's tattoo protocol, whereby ink signified rank and junior members took orders from their superiors to further the enterprise.

Furthermore, gang tattoos may be admissible when a relevant fact, such as membership, is contested. United States v. Lewis, 910 F.2d 1367, 1372 (7th Cir. 1990); Martinez v. City of Chi., No. 07-cv-422, 2009 WL 3462052, at *4-5 (N.D. Ill. Oct. 23, 2009). Here, Jose Guzman, a co-defendant, argued that his lion tattoo—which the

government cast as a signature Latin Kings tattoo—showed that Guzman was not a gang member because his tattoo was different. Guzman's use of tattoo evidence to distance himself from the gang suggests tattoo evidence was not only relevant and probative, but was also not unfairly prejudicial. The court did not err in admitting tattoo evidence at trial.

### c) Tape Evidence

Zambrano objected to several aspects of the government's tape evidence. First, he argued that the location of conversations, printed at the top of transcripts, is testimonial and should be removed, even though he acknowledged "it is clear that the government witnesses will testify that this conversation took place at a particular location." Augustin Zambrano's Mot. in Limine Regarding the Government's Proposed/Final Trs. 2. He also objects to the use of "aka" names in the transcripts. However, the witnesses testified at trial as Zambrano predicted, curing any unfair prejudice. In addition, the jury was instructed that the transcripts were not evidence but optional aids, whereas the real evidence was the voluminous recordings themselves. It is well established that courts possess "wide discretion" in determining whether to permit the jury to use written transcripts as aids in listening to tape recordings. United States v. Nunez, 532 F.3d 645, 650 (7th Cir. 2008) (citing United States v. Ceballos, 385 F.3d 1120, 1124 (7th Cir. 2004), United States v. Breland, 356 F.3d 787, 794-95 (7th Cir. 2004)). The court did not err in allowing the transcripts to be admitted and used by the jury to follow along with the recordings.

Next, Zambrano argues two admitted conversations were unfairly prejudicial. A November 21, 2007 conversation recounted the death of a young girl, the sister of a Latin

Kings gang member, in a retaliatory shooting by the Deuces, a rival gang. A week later, a November 27, 2007 conversation describes the Latin Kings' reprisal, including shooting a Deuces member and a desire to eliminate a witness. Mere prejudice, of course, is not enough to exclude evidence. United States v. Curry, 79 F.3d 1489, 1496 (7th Cir. 1996). The prejudice must be "unfair," which "means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Id.

Both November 2007 conversations show the organization of the Latin Kings, how rivalries with other gangs bred adherence to internal practices, and how illegal acts furthered the enterprise. That the conversations involved the death of a young girl and the proposed murder of a witness is certainly prejudicial, and fairly so. If they trigger emotion it is because of gang members' acts on behalf of the conspiracy, which do not evade prosecution for being too disturbing. The tapes of these particular conversations— a week apart and showing how one gang shooting comes in retaliation for another—are singularly probative. They illustrate the rivalries animating the Latin Kings' structure and power, both central to the RICO conspiracy. As a result, the court was permitted to tolerate additional risk of prejudice, if any, from emotionally difficult gangland events. See United States v. Torres, 977 F.2d 321, 328 (7th Cir. 1992). The court did not err in allowing the two taped conversations.

### *d) Prior Incarceration*

Zambrano claims it was error for the court to allow evidence of his prior incarceration and for failing to give the jury a limiting instruction. The government contends its evidence of his prior incarceration went to proving that Zambrano ran the

gang from behind bars. Although the government's evidence of Zambrano's incarceration was not overt "bad acts" evidence under Rule 404(b), the evidence did imply he committed other bad acts. United States v. Yusufu, 63 F.3d 505, 511 (7th Cir. 1995). Still, "evidence of a prior incarceration is admissible to fill a 'chronological or conceptual void.'" Id. (quoting United States v. Lashmett, 965 F.2d 179, 185 (7th Cir. 1992)). The evidence was probative of the Latin Kings' reach and sophistication, organizational traits relevant to demonstrating a RICO conspiracy. It was also probative of Zambrano's place in the gang's hierarchy that he would keep a hand on the reins from inside a cell. The court finds that the probative value of the prior incarceration evidence was not substantially outweighed by the danger of unfair prejudice. See id.

### 2. Claimed Errors at Trial

Zambrano argues the court made errors involving empaneling an anonymous jury, admission of evidence, and limits on cross-examination. Zambrano also contends the court erred in its jury instructions; in refusing to grant a mistrial; in admitting nine weapons seized from a storage locker; in allowing Milton Shanna to testify as an expert; and in refusing to sustain Zambrano's objections during closing arguments while allowing the government to vouch and present new facts and theories. Zambrano argues that, in sum, these missteps warrant a judgment of acquittal or a new trial. The government opposes both motions, arguing that error, if any, was harmless.

#### a) Anonymous Jury

Zambrano argues the use of an anonymous jury was unfair. Zambrano's entire argument is: "The selection of the jury as anonymous signaled the jury that the defendants were dangerous and that the jurors [sic] own safety was at issue." Zambrano

Mot. 3. This argument is undeveloped. See Olmeda-Garcia, 613 F.3d at 723-24. Zambrano states that he wishes to incorporate earlier pleadings. The government's opposition brief largely reprises its earlier pleadings in abridged form. The court entered an opinion and order, United States v. Zambrano, 2011 WL 528926 (N.D. Ill. Feb. 4, 2011), explaining the reasoning for its decision to empanel an anonymous jury on the government's motion. Zambrano raises no new concerns regarding the anonymous jury. Zambrano merely speculates as to what effect anonymity had on jurors, to whom the court provided a carefully tailored, neutral explanation during voir dire. The court declines to recapitulate its February 4, 2011 opinion here, except to note that it performed a thorough analysis pursuant to the factors in United States v. Mansoori, 304 F.3d 635 (7th Cir. 2002). The court found that the ordinarily disfavored use of an anonymous jury was easily warranted in light of credible risks that jurors could face intimidation and develop undue concerns for their own safety because defendants were involved in organized, violent crime. See, e.g., United States v. Morales, No. 09-2863, 2011 WL 3625135, at *8-10 (7th Cir. Aug. 18, 2011) (affirming use of anonymous jury in trial of Insane Deuces, rivals of the Latin Kings).

### b) Admission of Evidence

Zambrano claims the court failed to read a limiting instruction to the jury about Zambrano's prior incarceration. The government contends that because the court did, in fact, read a limiting instruction, this issue is moot. Even if the court had not done so, the issue is moot because Zambrano's argument is undeveloped. See Olmeda-Garcia, 613 F.3d at 723-24; Harvey, 2011 WL 2674830, at *6. Given the overwhelming evidence against Zambrano, as well as the high probative value of his time allegedly running the

gang from prison, any error by the court in failing to read such an instruction would have been harmless. This is particularly so because any unfair prejudice was already found not to substantially outweigh probative value. See Yusufu, 63 F.3d at 511.

Zambrano argues that the court allowed "guilt by association" evidence, which is error under United States v. Gray, 410 F.3d 338, 345 (7th Cir. 2005). Zambrano's entire argument is: "the Court erred by allowing the prosecution to present 'association' evidence as complained of repeatedly at trial, including highly prejudicial information predating the conspiracy." Zambrano Mot. 3. This argument is undeveloped and the court need not consider it. In any case it is unclear what Zambrano is referring to. As a general matter, the charge of conspiracy involves multiple actors, making evidence of criminal conduct by a person other than Zambrano, but nevertheless connected to Zambrano, proper and expected. Furthermore, the Gray court found that evidence of gang membership, when used to show members' ability to commit crimes in an organized fashion, was proper. Id. (affirming trial court). In this case, the government points out that it had to prove an association in fact among the defendants in order to demonstrate the RICO enterprise. The government also argues that to the extent Zambrano contends the jury failed to consider each defendant separately, the court directly addressed this concern by repeatedly instructing jurors they must consider each defendant separately. Absent evidence to the contrary, and there is none here, the court presumes the jurors followed the instructions. See United States v. Mallet, 496 F.3d 798, 802 (7th Cir. 2007) (citing United States v. James, 487 F.3d 518, 525 (7th Cir. 2007)). The court did not err in allowing evidence that could go to proving a conspiracy or enterprise.

Zambrano argues that "the Court erred in allowing testimony on the commissions of other crimes, wrongs or acts of co-defendant(s) and others not charged as defendants creating prejudice and serving to inflame the jury against the defendant." Zambrano Mot. 4. This is also undeveloped and the court need not consider it. Nor is it clear what Zambrano is referring to. In similar fashion, Zambrano argues that the "trial Court erroneously allowed the government to introduce tape recordings and transcripts of those taped conversations over written and in court objections" which were not relevant, would confuse the jury, and were unfairly prejudicial under Rule 403. Id. Zambrano adds: "Specific objections were made to individual tape recordings and transcripts overheard and recorded." Id. Likewise undeveloped, the challenge fails to specify which tapes and transcripts Zambrano contends unfairly prejudiced him. The court does not consider it.

Zambrano argues, again in conclusory fashion, that the court erred in allowing testimony from government witnesses as to "what was meant by various words and phrases on tape recordings played for them" even though the witnesses were not parties to the phone conversations. Id. This argument is undeveloped and fails to specify which witnesses, taped conversations, and testimony Zambrano contends unfairly prejudiced him. The government infers that Zambrano is referring to two specific witnesses, including Milton Shanna, whom Zambrano argues should not have been allowed to testify as an expert. To the extent Zambrano's argument is developed, the sort of testimony Zambrano challenges has long been recognized as admissible under the circumstances in this case. See United States v. Briscoe, 896 F.2d 1476, 1495-97 (7th Cir. 1990) (holding that "members of a[n] . . . organization are uniquely qualified to testify as to the code words used by their fellow conspirators" whether as experts or not);

12

see also United States v. McAnderson, 914 F.2d 934, 947 (proper to provide jurors with transcripts of decoded conversations). The court did not err in allowing this testimony. Moreover, as the government notes, Shanna did not, in fact, testify as a Rule 703 expert.

Zambrano argues the court erred in admitting the seized contents of a storage locker linked to a codefendant, Vicente Garcia, an alleged high-ranking gang enforcer. The locker contained nine firearms and ammunition. Zambrano argues only that this evidence violated Rule 403, and otherwise does not develop an argument to challenge this evidence. The court cannot say that the probative value of a stockpile of firearms in a case charging a RICO enterprise that thrived, in part, by stockpiling firearms is substantially outweighed by prejudice unfair to Zambrano. See Fed. R. Evid. 403.

### c) *Limits on Cross Examination*

Zambrano argues the court erred "in innumerable instances denying the defendant his right of confrontation of the prosecution's witnesses." Zambrano Mot. 5. Zambrano's motion refers specifically to only three instances.

First, Zambrano argues the court erred by barring defense counsel from using the word "lie" to describe how cooperating witnesses, directed by government agents, manipulated other Latin Kings in order to obtain evidence of criminal behavior. Zambrano fails to identify specific witnesses, agents, or questions. As a general matter, the court has "considerable discretion in supervising the arguments of counsel." United States v. Wesley, 422 F.3d 509, 518-19 (7th Cir. 2005); see also United States v. Amerson, 185 F.3d 676, 685-86 (7th Cir. 1999); Jones v. Lincoln Elec. Co., 188 F.3d 709, 730 (7th Cir. 1999); Trytko v. Hubbell, Inc., 28 F.3d 715, 727 (7th Cir. 1994). The court found that "lie" is not an accurate term to describe the conduct, orchestrated by the

government, of cooperating witnesses toward their fellow gang members who were the targets of the investigation. Such terminology could have confused the jury and was properly barred.

Zambrano next argues the court erred when it "sustained the objections of the government, preventing counsel from going into the extent of the benefits the government was providing for the witnesses testimony." Zambrano Mot. 5. To the contrary, multiple witnesses testified to the substantial financial benefits they received from the government. In any case, Zambrano fails to specify which witnesses or rulings he objects to. The court is unable to fully consider this challenge.

Third, Zambrano argues the court erred in "barring Defendant Guzman from cross-examining witnesses based on a proffer letter." Id. Once again, Zambrano fails to specify the witnesses whose cross examination he contends was improperly barred. This undeveloped challenge fails.

### d) Jury Instructions

Zambrano renews his objections to certain jury instructions he made at trial. He enumerates the instructions he challenges, but raises no new arguments. Recognizing the lack of any argument by Zambrano, the government does not respond. Because Zambrano has not developed this argument, the court does not consider it. The court's rulings at trial stand.

### e) Government's Closing Arguments

Zambrano recites a series of conclusory accusations of misconduct at trial by the government, but without referring to any specific language by the government. The court does not consider these challenges. Zambrano also contends the court erred when it "cut

off defendant's objection and merely stated that if the lawyer says something that's inconsistent with the evidence, you are to make your decision based on the evidence you heard." Zambrano Mot. 9. Because Zambrano fails to specificy which exchange he is referring to—or even what defense counsel's objection concerned—the court does not respond to this challenge, except to note that its instruction to jurors, as paraphrased by the Zambrano Motion, is proper.

### *f) Jurors' Attention*

Zambrano contends that "various jurors slept through some of the testimony at trial." Zambrano Mot. 10. Zambrano fails to identify which jurors he claims slept through which testimony. Although jurors were anonymous by name, they were identifiable by number. Nothing prevented Zambrano from recording the alleged napping and making this part of his argument. He did not. This argument is undeveloped and therefore fails.

### *g) Pro Forma Arguments*

Zambrano recites a series of alleged constitutional wrongs, none accompanied by references to specific events at trial. The court notes these objections. They are, however, undeveloped and merit no response.

### 3. Motion for a Mistrial

At trial, after a hearing, the court denied Zambrano's motion for a mistrial over the possibility that the jury saw the defendants emerging into the courtroom through a wood-paneled door. The door leads to their holding cell, though the cell was out of view. Ordinarily parties are seated before the jury comes out. Because there was no prejudice whatsoever from this event, the court denied the motion. See United States v. Rutledge,

40 F.3d 879, 883 (7th Cir. 1994). Zambrano makes no new arguments. The government does respond to Zambrano's rehashed arguments, which it construes as making the case that "the defendants' walk into the courtroom escorted by plainclothed U.S. Marshals necessarily signaled to the jury that the defendants were in custody." Government's Consolidated Resp. to Defs.' Mots. For New Trial and Acquittal 14. The government describes the facts shown on the courtroom security camera footage, which was played at the hearing. The footage showed that jurors, even if they saw the defendants entering, could not see the cell, did not know the door led to a cell, saw the defendants in their usual street clothes, and did not see them being restrained by Marshals, who were dressed in suits that day and throughout the trial. Moreover, the door jurors may have seen the defendants emerge from is identical to three other courtroom doors—the attorneys' cloakroom and two doors to the chambers hallway. The courtroom deputy, judge, jurors, and defendants all use from the same kind of wood-paneled door, designed to blend into the paneling on the walls of the courtroom.

The court recognizes that "[c]entral to a defendant's Fourteenth Amendment right to a fair trial is the principle that one accused of a crime is entitled to have his guilt or innocence determined solely on the basis of the evidence introduced at trial, and not on grounds of official suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial." Holbrook v. Flynn, 475 U.S. 560, 567 (1986) (quotations omitted). Some practices, such as forcing a defendant to wear prison clothing or shackles, are at odds with this principle. Estelle v. Williams, 425 U.S. 501, 503–504 (1976). This right, however, is not absolute. Allen, 397 U.S. at 343. Sometimes restrictive measures or noticeable security is needed. See Holbrook, 475 U.S. at 567–68.

Featuring an alleged leader of one of the nation's most infamous criminal street gangs, Zambrano's trial was heavy on security. There were usually two Marshals for every defendant in the courtroom. A separate metal detector with court security officers stood outside the courtroom door. But these measures were realistically subtle if not hidden—the Marshals wore suits and the metal detectors were completely out of jurors' view. With carefully veiled security measures over five weeks, on a single day jurors at most caught a fleeting, ambiguous glimpse of men in suits escorting the defendants to their seats next to their lawyers, also in suits. This is a far cry from jurors observing defendants in shackles, which even then does not automatically signify prejudice. See United States v. Traeger, 289 F.3d 461, 472 (7th Cir. 2002) (juror saw defendant shackled and wearing a prison uniform); United States v. Jones, 696 F.2d 479, 492 (7th Cir. 1982) (juror saw defendant shackled to another defendant whose trial received major media publicity).

Zambrano fails to make any argument to suggest he suffered actual prejudice, see Traeger, 289 F.3d at 472, and the court found at trial, after a hearing where video evidence was presented, that no prejudice could have occurred. A defendant "bears the burden of showing affirmatively that he was prejudiced by inadvertent exposure to the juror." Id. Zambrano has not carried this burden. He insinuates the court should have interrogated jurors about what they saw, but the court is resolved that this would have served only to amplify a risk of prejudice. The court did not err in denying a mistrial.

## III. CONCLUSION

Viewing the evidence in the light most favorable to the government, but without weighing the evidence or making credibility determinations, the court in its Rule 29 analysis finds that a rational juror could have found Zambrano guilty on every element of all three counts. Making its own assessment of the evidence, the court in its Rule 33 analysis finds that no trial error, alone or in the aggregate with other alleged errors, had a prejudicial effect on the jury's verdict. Nor was the verdict so against the weight of the evidence as to warrant a new trial for Zambrano. For the foregoing reasons, the Zambrano Motion is denied.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

DATED: 9/25/11